1  **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Linda Rogers, individually and as sole member of Little Red Hen, LLC, a Colorado limited liability company; and Little Red Hen, LLC, a Colorado limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>Wesco Properties, LLC, a Colorado limited liability company; et. al.<br><br>Defendants. | No. CV 09-08149-PCT-MHM<br><br>**ORDER** |

Currently pending before the Court is Defendants Wesco Properties, LLC ("Wesco"), Douglas West ("West"), and Ronald Kohan's ("Kohan") (collectively "Defendants") Motion to Dismiss. (Doc. 19). After reviewing the pleadings and determining oral argument unnecessary, the Court issues the following Order.

**I.  BACKGROUND**

Plaintiff Linda Rogers ("Rogers") is a resident of Sedona, Arizona and the sole member of Little Red Hen, LLC ("LRH") (collectively "Plaintiffs"). (Doc. 1). LRH is a Colorado limited liability company. (Id.). Defendant Wesco is a Colorado limited liability company and the developer and subdivider of a development known as the Vista Del Rio Planned Unit Development (the "Vista Del Rio Subdivision") in the town of South Fork,

Colorado ("South Fork"). (Id.). Defendants Kohan and West are managing members of Wesco. (Id.). Kohan and West both reside in Yavapai County, Arizona. (Id.).

On or about May 2007, Wesco admitted Rogers as a member of Wesco in consideration for Rogers' promise to contribute $1,105,000 in capital to Wesco. (Id.). The agreement between Rogers and Wesco is evidenced by a membership agreement dated May 28, 2007 (the "Membership Agreement"). (Id.). In consideration for this promise, Wesco issued Rogers a membership interest representing a 13.3 % ownership interest in Wesco. (Id.). The Membership Agreement called for Rogers to disassociate from Wesco upon completion of her capital contribution payments and the filing of a plat for the Vista Del Rio Subdivision in the records of Rio Grande County, Colorado. (Id.). Wesco used Rogers' admission to Wesco as a means of facilitating the transfer of the Lots to Rogers prior to the recordation of the subdivision plat, and to finance construction of infrastructure improvements. (Id.). The infrastructure improvements were included in the Membership Agreement because South Fork has a land use plan which prohibits the sale of subdivision lots prior to the completion of such improvements. (Id.). The required improvements include the completion of a water and sanitary system, electronic and telephone infrastructure, and paved roads, including curbs and gutters. (Id.). Rogers made the required capital contribution to Wesco and subsequently formed LRH for purposes of receiving the lot transfer from Wesco. (Id.). Rogers subsequently acquired, through LRH, eight single and multifamily lots in the Vista Del Rio Subdivision (the "Lots"). (Id.).

On or about August 14, 2007, Wesco transferred the Lots to LRH in the Vista Del Rio Subdivision. (Id.). At the same time the Lots were transferred to LRH, Rogers ceased to be a member of Wesco, per the terms of the Membership Agreement. (Id.). The purchase price paid by Rogers to Wesco through her capital contribution represented payment in full for title to the Lots and all associated infrastructure improvements required by the Subdivision Improvement Agreement. (Id.).

At the time Wesco distributed the Lots to Plaintiffs in consideration for redemption of Rogers' interest and capital contribution to Wesco, Defendants allegedly promised

Plaintiffs implicitly and explicitly, that the infrastructure improvements would be completed by November 2008, in accordance with the requirements of the Subdivision Improvement Agreement. (Id.). However, this promise was not reduced to writing in Wesco's contract with Rogers. (Id.). The Subdivision Improvement Agreement expired on August 14, 2009, and Wesco allegedly failed to make the promised infrastructure improvements. (Id.).

In November 2008, Rogers became aware that Wesco had allegedly failed to make the promised infrastructure improvements. (Id.). On November 10, 2008, West and Kohan, individually and on behalf of Wesco, allegedly reaffirmed the promises made to Rogers regarding the timely completion of the infrastructure improvements. (Id.). However, due to Wesco's alleged failure to complete the improvements, which are required by South Fork to sell subdivided lots, Rogers alleges that she is unable to sell the Lots. (Id.).

On September 2, 2009, Plaintiffs filed the Complaint, alleging that Defendants' failure to make the required infrastructure improvements and related conduct (1) violated the Interstate Land Sales Full Disclosure Act, (2) violated the Arizona Consumer Fraud Act, (3) violated the Colorado Consumer Protection Act, (4) constituted a breach of contract and contract estoppel, (5) constituted a breach of the implied covenant of good faith and fair dealing, (6) constituted common law fraud, and (7) constituted intentional interference with contractual relations. (Doc. 1).

On December 18, 2009, Defendants filed a Motion to Dismiss for lack of subject matter jurisdiction pursuant to FED.R.CIV.P. 12(b)(1) and improper venue pursuant to FED.R.CIV.P. 12(b)(3). (Doc. 19). Defendants' Motion to Dismiss is the subject of the instant order.

**II.     SUBJECT MATTER JURISDICTION**

    **A.     Legal Standard**

Plaintiffs contend that the Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States") and 15 U.S.C. § 1719 of the ILSA ("The district courts of the United States . . . shall have jurisdiction of offenses and violations under this title . . . ."). Defendants argue that the Complaint should be dismissed for lack of subject matter jurisdiction pursuant to FED.R.CIV.P. 12(b)(1).

Both parties referred to two potentially dispositive issues in the briefing regarding the legal standard. First, Plaintiffs contend that all motions to dismiss must be viewed with disfavor. Second, Plaintiffs contend that Defendants are actually arguing for a dismissal based on failure state a claim, not for lack of subject matter jurisdiction, which would presumptively convert the Court's legal standard for evaluation into one for a Rule 12(b)(6) motion instead of a Rule 12(b)(1) motion. Each of these issues will be addressed in turn.

### 1. "Disfavor"

Plaintiffs claim that "all motions to dismiss must be viewed with disfavor." (Doc. 24, p. 14, line 21). On a Rule 12(b)(1) motion to dismiss, the court presumes it lacks subject matter jurisdiction until the plaintiff can prove otherwise. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside [the court's] limited jurisdiction, [ ] and the burden of establishing the contrary rests upon the party asserting jurisdiction."); see also Thornhill Publ'g v. General Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979) ("[P]laintiff will have the burden of proof that jurisdiction does in fact exist"). Indeed, the very cases that Plaintiffs cite as supporting their proposition only concern motions to dismiss for failure to state a claim. See, e.g., Williams v. Gorton, 529 F.2d 668, 672 (9th Cir. 1976) (finding that "ordinarily a motion to dismiss should be disfavored," but only in regards to the plaintiff's complaint, which failed to state a claim under the Civil Rights Act, 42 U.S.C.. §§ 1983, 1985).

On the other hand, on a Rule 12(b)(6) motion to dismiss for failure to state a claim, Plaintiff only needs to allege facts sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The complaint "must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).

As such, the standards for a Rule 12(b)(1) and Rule 12(b)(6) dismissal are very different. The burden on the plaintiff is greater in a Rule 12(b)(1) motion because she must prove subject matter jurisdiction, compared to a Rule 12(b)(6) motion, where the plaintiff need not prove her claim, but only allege facts to raise her right to relief above a speculative level. Thus, not all motions to dismiss are viewed with disfavor.

### 2. Rule 12(b)(1) vs. Rule 12(b)(6) Dismissal

Defendants argue that the Court lacks federal question subject matter jurisdiction because the facts of the Complaint do not support that a "sale" of property took place for the purposes of the ILSA, as evidenced by the Membership Agreement, which states that the transaction was a "capital contribution" and not a "sale." (Doc. 19). Without a "sale" or "lease," Defendants contend that Plaintiffs can not invoke a claim under the ILSA, therefore destroying their federal question subject matter jurisdiction. (Id.). Plaintiffs respond that Defendants are actually arguing for a dismissal based on failure state a claim, not for lack of subject matter jurisdiction, which would presumptively convert the Court's legal standard for evaluation into one for a Rule 12(b)(6) motion to dismiss instead of a Rule 12(b)(1) motion to dismiss. (Doc. 24).

If the Court were to evaluate the Complaint under the Rule 12(b)(6) standard, it would accept Plaintiff's non-conclusory allegations as true, including the assertion that the capital contribution was a "sale" for the purposes of the ILSA. See Wyler Summit Partnership, 135 F.3d at 661. However, Defendants clearly state in their Reply that they are not seeking dismissal under Rule 12(b)(6), but are limiting their arguments to lack of subject matter jurisdiction under Rule 12(b)(1). (Doc. 28, p. 2). Therefore, the Court will limit its analysis to subject matter jurisdiction under Rule 12(b)(1).

**B.    Analysis**

Defendants argue that the Complaint should be dismissed for lack of subject matter jurisdiction because: (1) the required sale or lease, for the purposes of the ILSA, does not exist, therefore destroying Plaintiffs' federal question under the ILSA; and (2) Plaintiffs do not state their ILSA fraud claim with enough particularity to satisfy the pleading standard for fraud under FED.R.CIV.P. 9(b). (Doc. 19).

### 1. Interstate Land Sales Full Disclosure Act

The Interstate Land Sales Full Disclosure Act, or ILSA, was enacted by Congress in 1968 in order to protect "purchasers" from abuse by real estate "developers" through interstate commerce and the use of the mails in the promotion and sale of properties offered as part of a common promotional plan. Nargiz v. Henlopen Developers, 380 A.2d 1361, 1362 (Del. 1977). In passing the ILSA, Congress desired to protect these purchasers from the unscrupulous sale of undeveloped home sites, frequently involving the out-of-state sale of land purportedly suitable for development but actually unsuitable. See Winter v. Hollingsworth Properties, Inc., 777 F.2d 1444, 1447 (11th Cir. 1985). Although Congress was primarily concerned with the sale of raw land, it made the ILSA applicable to the sale or lease of lots in subdivisions as well. Id.

The ILSA provides a purchaser of a residential lot with a cause of action against the developer or agent of the developer for violations of the ILSA's registration and disclosure provisions. 15 U.S.C. § 1709. To prove an ILSA claim, a plaintiff must first show that she qualifies for ILSA protection. To qualify for protection, a plaintiff must show that he or she purchased a lot from a defendant who qualifies as a developer or developer's agent under the ILSA. The ILSA defines a developer as, "any person who, directly or indirectly,[1] sells or leases . . . any lots in a subdivision." 15 U.S.C. § 1701(5). Second, the plaintiff must show

---

[1] For the purposes of the ILSA, an indirect seller is one who conducts a sale through means other than direct, face-to-face contact with buyers. See Bartholomew v. Northampton Nat'l Bank of Easton, Pa., 584 F.2d 1288, 1293 (3rd Cir. 1978) ("There is no indication in the language of the statute or in the legislative history of the Act that an indirect seller is other than one who is involved in some manner in the selling efforts related to a land development project.").

- 6 -

that a defendant made an untrue statement or omitted a material fact in its dealings with the plaintiff purchasers in violations of § 1703(a)(2).

Plaintiffs claim that Defendants' failure to make the required infrastructure improvements to the Lots, as prescribed by their contractual agreements, constitutes a violation of the ILSA. Plaintiffs also claim that their approximately $1 million capital contribution to Defendants in exchange for a membership interest in Wesco and the transfer of the Lots was a "sale" and thus entitles them to a claim under the ILSA.

### 2. Whether the Complaint Raised a Federal Question Under ILSA

If a claim for relief is created by a federal law, as it is with Plaintiffs' ILSA claim, then their cause of action "arises under" a law of the United States and raises a federal question under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"). See Merrell Dow Pharms., Inc. v. Thompson, 478 U.S. 804, 808 (1986); see also Millers Nat'l Ins. Co. v. Axel's Express, Inc., 851 F.2d 267, 270-271 (9th Cir. 1988). Under the "arising under" test, any non-frivolous assertion of a federal claim suffices to establish federal question jurisdiction, even if that claim is later dismissed on the merits. Trustees of the Screen Actors Guild-Producers Pension & Health Plans v. NYCA, Inc., 572 F.3d 771, 775 (9th Cir. 2009); see also Bell v. Hood, 327 U.S. 678, 682 (1946) ("If the court . . . exercise[s] its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction.").

Guided by this principle, whether a "sale" occurred within the meaning of § 1701 of the ILSA is a question on the merits of the claim, not an issue of subject matter jurisdiction. See Trustees, 572 F.3d at 775 (Finding that whether a defendant is an "employer who is obligated to make contributions" within the meaning of ERISA, 29 U.S.C. § 1145, is a question on the merits of the claim, not an issue of subject matter jurisdiction). Here, no party contests that the transaction in question (the Lot distribution in exchange for Plaintiffs' approximately $1 million) occurred. Furthermore, no party claims that Plaintiffs are attempting to covertly gain access to the Court on the back of a frivolous federal claim. To

the contrary, Plaintiffs have clearly articulated that a sale took place on the face of their complaint, in order to form a basis for an ILSA claim:

> In connection with the **sale** of the Lots to Rogers and LRH, Wesco, and Kohan and West, as its managing members, (i) employed devices, schemes and artifices to defraud Rogers and LRH and (ii) obtained money or property from Rogers and LRH by means of untrue statements and/or omissions to state material facts necessary in order to make the statements made (in light of the circumstances in which they were made in the context of the overall offer and **sale** of the Lots) not misleading.

(Doc. 1, p. 10) (emphasis added). At this stage, it would be improper for the Court to evaluate whether or not an actual "sale" took place for the purposes of the ILSA. Such a determination is a judgement on the merits, and could only be addressed in a Rule 12(b)(6) motion to dismiss, which Defendants expressly state that they are not seeking. (See Doc. 28, p. 2). Plaintiffs' statement in the Complaint that a sale occurred is adequate to invoke a federal question based on the ILSA. Accordingly, Defendants' motion to dismiss for lack of subject matter jurisdiction is denied.

### 3. Rule 9(b) Particularity

Defendants contend that Plaintiffs' alleged failure to state their fraud claim with particularity warrants a dismissal for lack of subject matter jurisdiction. (Doc. 19, p.4).

Rule 9(b) of the Federal Rules of Civil Procedure provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The requirements of this rule apply to fraud claims under the ILSA. Garcia v. Arciasanta Maria Resort, Inc., 528 F. Supp.2d 1283, 1294 (S.D. Fla. 2007); see Vess v. Ciba-Geigy Corp., USA, 317 F.3d 1097, 1104 (9th Cir. 2003) (Rule 9(b) applies where fraud is an essential element of the claim). Rule 9(b) requires that the Complaint state the time, place, and specific content of the false representations and the identities of the parties to the misrepresentation. Schreiber Distrib. Co. V. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); Vess, 317 F.3d at 1106 ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged."). In a fraud suit involving multiple defendants, a plaintiff must, at a minimum, "identif[y] the role of [each] defendant[]

in the alleged fraudulent scheme." Swartz v. KPMG LLP, 476 F.3d 756, 765 (9th Cir. 2007). Further, a plaintiff must set forth what is false or misleading about a statement and why it is false. Moore v. Kayport Package Exp., Inc., 885 F.2d 531, 540 (9th Cir. 1989). This means that the pleadings must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotations omitted)).

However, failure to meet the pleading standard for fraud under Rule 9(b) is not grounds for a dismissal for lack of subject matter jurisdiction. If a pleader fails to plead fraud with sufficient particularity, the pleader usually will be permitted or have the right to amend to bring the pleading into compliance with the requirements of Rule 9(b). See, e.g. Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1275 (11th Cir. 2006) (The district court has a supervisory obligation to order repleading sua sponte under FED.R.CIV.P. 12(e) when complaint is insufficient under FED.R.CIV.P. 9). In fact, the Court's discretion to dismiss a pleading without affording Plaintiff leave to amend is restricted by Rule 15(a).

Under Rule 15(a), a party may amend its pleading once as a matter of course within twenty-one days after serving it. If the pleading is one to which a responsive pleading is required, a party may amend once as a matter of course within twenty-one days after service of a responsive pleading or within twenty-one days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. FED.R.CIV.P. 15(a)(1); see also FED.R.CIV.P. 12(b), (e), (f). After the time for amendment as a matter of course has elapsed, a party may amend its pleading only with the opposing party's written consent or with leave of court. However, the court should freely grant leave when justice so requires. FED.R.CIV.P. 15(a)(2). Generally, a court may not deny leave to amend without giving some reason, such as undue delay, bad faith, or futility of the amendment. See Foman v. Davis, 371 U.S. 178, 182 (1962). A pleader also may be denied leave to amend a pleading insufficient under Rule 9(b) if the pleader already has been afforded at least one chance to replead. Luce v. Edelstein,

1   802 F.2d 49, 56 (2d Cir. 1986) (leave to amend often not permitted if the pleader already had
2   one opportunity to plead with greater particularity).

3         Here, Defendants do not cite, nor is the Court aware of, any case or precedent where failure to plead fraud with particularity in accordance with Rule 9(b) would justify a dismissal based on subject matter jurisdiction. Although the Court must, sua sponte, order Plaintiffs to replead when their complaint is insufficient under Rule 9, see, e.g. Wagner, 464 F.3d at 1275, it will not dismiss Plaintiffs' Complaint until (1) the Court has determined that repleading is necessary, and (2) Plaintiffs have already exercised their right to replead under Rule 15.

      Here, neither condition has been fulfilled. The Complaint repeatedly states the time the alleged fraud took occurred: "[a]t the time Wesco sold the Lots to Rogers and LRH . . . ." (Doc. 1, p. 6), "[o]n or about November 10, 2008 . . . at the time Rogers purchased the interest in and Lots from Wesco . . . ." (Id. at 8). It also clearly alleges the place: "Yavapai County, Arizona," (Id. at 3), and the specific content of Defendants' alleged false representations:

> Wesco, West and Kohan implicitly and explicitly promised Rogers and LRH that the infrastructure improvements . . . would be timely completed . . . . (Id. at 6). Wesco intended that the [] Agreement serve as a device to dissuade Rogers and LRH from taking any action and to provide false assurance that the infrastructure improvements would be completed . . . . (Id. at 8). Wesco, and Kohan and West as its managing members, misrepresented to Rogers and LRH Wesco's present intent to complete the infrastructure improvements . . . . (Id. at 10).

Furthermore, the Complaint describes the role that Wesco, Kohan and West played in the alleged fraudulent scheme to induce Plaintiffs to invest in the Vista Del Rio Development: "West and Kohan, individually and on behalf of Wesco, reaffirmed the explicit promises made to Rogers and LRH . . . ." (Id. at 8). The Complaint sets forth what was allegedly false and misleading about Defendants' implicit and explicit promises and the November 2008 Vista Del Rio Agreement: "But for the explicit and implicit promises and representations that the infrastructure improvements . . . would be completed . . . neither Rogers nor LRH would have paid $1,105,000 to Wesco for the Lots . . . ." (Id. at 6). As such, the Complaint

- 10 -

is specific enough to give Defendants adequate notice of the alleged misconduct to defend against the fraud charges. Accordingly, the Court finds that the Complaint has pled its fraud claim under the ILSA with sufficient particularity to satisfy the standard under Rule 9(b). However, even if it had not, the Court would not find that a violation of Rule 9(b) was a sufficient reason to dismiss for lack of subject matter jurisdiction. Accordingly, the Rule 9(b) particularity aspect of Defendants' motion to dismiss is denied as well.

**III.　VENUE**

　　**A.　Legal Standard**

Defendants seek dismissal for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) because the Membership Agreement contains a forum selection clause in which "[v]enue for any legal action shall be in Rio Grande County, Colorado." (Doc. 19, p. 6). If the Court determines that venue in the District of Arizona is improper, the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought." 28 U.S.C. § 1406(a).

A motion to enforce a forum-selection clause is treated as a motion to dismiss pursuant to Rule 12(b)(3). See Kukje Hwajae Ins. Ltd. v. M/V Hyundai Liberty, 408 F.3d 1250, 1254 (9th Cir. 2005). Consequently, the pleadings need not be accepted as true, and facts outside the pleadings properly may be considered. Id. A forum selection clause is presumptively valid, and the party seeking to avoid a forum selection clause bears a "heavy burden" to establish a ground upon which the Court will conclude that the clause is unenforceable. Doe 1 v. AOL LLC, 552 F.3d 1077, 1083 (9th Cir. 2009) (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 17 (1972)). In Bremen, the Supreme Court identified three circumstances where enforcement of a forum selection clause would be unreasonable:

　　(1) The clause was the product of fraud, undue influence or overreaching;

　　(2) Enforcement would deprive a party of his day in court;

　　(3) Enforcement would contravene a strong policy of the forum where the suit
　　　　was brought.

See Bremen, 407 U.S. at 12-13, 15, 18; accord Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1140 (9th Cir. 2004).

**B.     Analysis**

Both parties referred to two potentially dispositive issues in the briefing regarding the forum selection clause. First, only Plaintiff Rogers, not Plaintiff LRH, is a named party and signatory on the Membership Agreement which contains the forum selection clause. Second, the Membership Agreement called for Plaintiff Rogers to disassociate from Wesco upon receipt of the Lots, which could possibly terminate the Membership Agreement and the forum selection clause. Each of these issues will be addressed in turn. After its determination on the validity of the forum selection clause, the Court will evaluate whether to dismiss for improper venue pursuant to Rule 12(b)(3), or whether it is in the "interest of justice" to transfer the case to the District of Colorado, where it should have been brought in order to be in compliance with the forum selection clause. 28 U.S.C. § 1406(a).

**1.     LRH as the Alter Ego of Rogers**

Defendants contend that even though LRH is not a party to the Membership Agreement, it should be bound by the agreement's forum selection clause because LRH is so closely related to Rogers, that it is her "alter ego." (Doc. 19, p. 7; Doc. 28, p 9).

It is well settled in the Ninth Circuit that a forum selection clause can restrict a third-party beneficiary to the designated forum, even if that party has not signed the contract which contains the forum selection clause. TAAG Linhas Aereas de Angola v. Transamerca Airlines, Inc., 915 F.2d 1351, 1354 (9th Cir. 1990) ("The Third Circuit has held that a forum selection clause can restrict a third-party beneficiary to the designated forum . . . [w]e also so hold."). Furthermore, "[a] range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses." Id. (quoting Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 514 n. 5 (9th Cir. 1988)).

Here, Rogers is the sole member of LRH. (Doc. 1). Furthermore, Rogers formed LRH for the purpose of receiving the Lots from Wesco. (Id.). Since LRH received the Lots as a result of Rogers signing the Membership Agreement, it is reasonable to conclude that

- 12 -

LRH was a third-party beneficiary of the Membership Agreement. At the very least, LRH was a participant in the Lot transfer transaction who benefitted from it in the form of receiving the Lots from Wesco. On this basis, for the purpose of venue determination, LRH is the alter ego of Rogers and is subject to the forum selection clause in the Membership Agreement.

### 2. Rogers' Disassociation from Wesco

Since both LRH and Rogers are subject to the forum selection clause, the Court's next task it to determine if the forum selection clause is valid. As previously stated, a forum selection clause is presumptively valid, and the party seeking to avoid a forum selection clause bears a "heavy burden" to establish a ground upon which the Court will conclude that the clause is unenforceable. Doe 1, 552 F.3d at 1083; Bremen, 407 U.S. at 17. As such, Plaintiffs would have to show that one of the three exceptions articulated in Bremen occurred which would make enforcement of the forum selection clause unreasonable. However, Plaintiffs make no contention that (1) the forum selection clause was a product of fraud or overreaching, (2) that enforcement would deprive them of their day in court, or (3) that enforcement would contravene a strong policy in the District of Arizona. See Bremen, 407 U.S. at 12-18; Murphy, 362 F.3d at 1140.

Instead, Plaintiffs contend that the forum selection clause is unenforceable because the Membership Agreement calls for Rogers to "disassociate" from Wesco "upon the completion of [Rogers'] payment of the above-stated capital contribution and [Wesco's] filing of the final plat of the Vista del Rio Subdivision in the Records of Rio Grande County, Colorado . . . ." (Doc. 19-1, p. 3).[2] Plaintiffs argue that Rogers' disassociation from Wesco effectuated the termination of the Membership Agreement, and as a contract, the Membership Agreement was fully performed. (Doc. 24, p. 13). As such, the forum selection clause would no longer apply. (Id.).

---

[2] The Court may consider provisions of the Membership Agreement attached to the Motion to Dismiss in its Rule 12(b)(3) dismissal because facts outside the pleadings may be considered in such motions. See Kukje, 408 F.3d at 1254.

- 13 -

To support their contention, Plaintiffs cite three District Court cases in which forum selection clauses did not bind the parties to the transactions: <u>Lockwood Corp. v. Black</u>, 501 F. Supp. 261, 263-64 (N.D. Tex. 1980); <u>Neil Bros. Ltd. v. World Wide Lines, Inc.</u>, 425 F. Supp. 2d 325, 328 (E.D.N.Y. 2006); <u>Soul Circus, Inc. v. Burger King Corp.</u>, 2006 WL 1430555 at *2. (Doc. 24, pp. 13-14). However, these cases are distinguishable from the instant case. First, in <u>Lockwood</u>, the plaintiff purchased equipment from the defendant pursuant to a contract, but the contract was later cancelled by the plaintiff in its entirety. <u>Lockwood</u>, 501 F. Supp. at 263. In <u>Neil</u>, the patent license agreement at issue, which contained the forum selection clause, was terminated by the defendant shortly after it was executed. <u>Neil</u>, 425 F. Supp. 2d at 328. Finally, in <u>Soul</u>, a series of exclusive marketing and sponsorship contracts between the parties, one of which contained a forum selection clause, were initiated and terminated on several pre-determined dates, which were expressly articulated in the contracts. <u>Soul</u>, 2006 WL 1430555 at *1-3.

Here, the Membership Agreement was neither cancelled by Plaintiffs in its entirety, terminated by Defendants after it was executed, nor terminated on a pre-determined date in preparation for the formation of a new agreement. These cases do not support Plaintiffs' argument that Rogers' disassociation from Wesco terminated the Membership Agreement and made the forum selection clause unenforceable. Furthermore, Plaintiffs' position is internally inconsistent; they are seeking to simultaneously enforce Wesco's obligations under the Membership Agreement while at the same time arguing that the forum selection clause is invalid because the agreement has been terminated. For these reasons, Plaintiffs have failed to satisfy their burden of showing why the forum selection clause in the Membership Agreement is invalid, and venue in the District of Arizona is improper.

### 3. Transfer to the District of Colorado

Because the forum selection clause is valid and venue is improper in Arizona, the Court must next decide whether to dismiss the case or whether it is in "the interest of justice" to transfer the case. 28 U.S.C. § 1406(a). A Court may transfer a case only to a venue where the case "could have been brought." <u>Id.</u> An ILSA case may be brought in several venues:

- 14 -

> [I]n the district wherein the defendant is found or is an inhabitant or **transacts business**, or in the district where the offer or sale took place, if the defendant participated therein . . . .

15 U.S.C. § 1719 (emphasis added). Applying these options, Defendants Kohan and West can be found in and are inhabitants of Arizona. Furthermore, Plaintiffs allege that the offer and sale of the Lots took place in Yavapai County, Arizona. However, because the Colorado forum selection clause is valid, the case could not have been brought in Arizona. While it is a disputed fact where the offer or sale of the Lots took place, it is undisputed by the parties that Wesco, Kohan and West transact business in Colorado. Their business venture involving the Lots in the Vista del Rio Subdivision is located in Colorado. Wesco is a Colorado LLC, and Kohan and West are managing partners of Wesco. Hence, Defendants transact business in Colorado, which makes it a forum where the case "could have been brought." Additionally, Defendants make no objections to the District of Colorado having personal jurisdiction over them. To the contrary, Defendants wrote the Colorado forum selection clause into the Membership Agreement and requested in their Motion to Dismiss that the Court dismiss without prejudice, so Plaintiffs could exercise their "right to bring this action in Rio Grande County, Colorado." (Doc. 19, p. 8). Accordingly, the Court finds it in the interest of justice to transfer the case to the District of Colorado.

**Accordingly,**

**IT IS HEREBY ORDERED** denying Defendants' Motion to Dismiss. (Doc. 19).

**IT IS FURTHER ORDERED** transferring the case to the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1406(a).

DATED this 3rd day of August, 2010.

_____
Mary H. Murguia
United States District Judge